# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **GINO ADAMSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **CASE NO.:** |
| **vs.** | ) |
| | ) |
| **THE CITY OF BIRMINGHAM,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

## PRELIMINARY STATEMENT

1. Plaintiff, Gino Adamson ("Plaintiff"), an employee of The City of Birmingham ("Defendant"), seeks declaratory and injunctive relief, compensatory damages, back pay, and front pay from Defendant arising from Defendant's violation of rights guaranteed to plaintiff under The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

## STATEMENT OF JURISDICTION

2. This is a suit authorized and instituted pursuant to The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq. and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

3. This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States cited above.

4. Venue is proper in this district, pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in Jefferson County, Alabama located in this judicial district.

## STATEMENT OF PARTIES

5. Plaintiff is an adult resident of this Judicial District and Division and suffers from Post-Traumatic Stress Disorder, hereafter referred to as "PTSD", a disorder characterized by physical and mental reactions to unwanted memories of the trauma, including severe anxiety and depression, nightmares, hostility, self-destructive behavior, and/or social isolation.

6. Defendant, The City of Birmingham ("Defendant"), is a government entity of the State of Alabama and is an employer within the meaning of The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq. Defendant is doing business within this District and Division.

## STATEMENT OF FACTS

7. Plaintiff is a 37-year-old Caucasian male who suffers from Post-Traumatic Stress Disorder.

8. On or about April 13, 2009, Plaintiff began working as a police officer for Defendant.

9. Plaintiff worked as a police officer on day shift at the West Precinct for 11 years. Plaintiff is qualified to do the job of police officer.

10. On or about April 24, 2020, Plaintiff was instructed by Sergeant Osborn (hereinafter "Osborn") (white male) to wear a covid-protective mask (hereinafter "masks") at UAB, or Plaintiff would be taken out of service. Plaintiff declined and informed Osborn that he could not wear a mask due to feelings of suffocation. Plaintiff was then taken out of service and ordered to Internal Affairs to give a taped statement. Plaintiff observed numerous employees not wearing masks in the presence of Osborn, including nurses, doctors and maintenance staff. Plaintiff was put back into service later that day.

11. On or about May 1, 2020, the City of Birmingham's face covering ordinance went into effect.

12. On or about May 4, 2020, Plaintiff was told to leave work to get a medical evaluation in support of his disability and explanation for not wearing a mask. Plaintiff provided his supervisors with a letter from his doctor that stated that accommodations for the Plaintiff should be made by the Defendant due to Plaintiff's feelings of suffocation and anxiety from wearing a mask.

13. On or about May 5, 2020, Plaintiff was instructed by Lieutenant Colston (hereinafter "Colston") (black female) to wear a mask around his neck, despite the doctor's note exempting Plaintiff from wearing a mask.

14. On or about May 7, 2020, Plaintiff was instructed by Colston to find a mask to wear around his neck before roll call.

15. On or about May 8, 2020, Plaintiff was told to get a second note from his doctor after receiving a letter of counseling from Sergeant Rachel (hereinafter "Rachel") (black female) regarding his inability to wear a mask. Plaintiff observed several officers and supervisors without masks at the precinct.

16. On or about May 9, 2020, Plaintiff observed Officer Hunt (hereinafter "Hunt") (black male) and Officer Reese (hereinafter "Reese") (black male) at roll call without masks. Neither of these officers received discipline for not wearing a mask.

17. On or about May 11, 2020, Plaintiff filed a complaint with Human Resources regarding Colston's continual requests of Plaintiff to wear a mask, despite Plaintiff's presentation of doctors' notes that he suffered from a disability that precluded Plaintiff from wearing a mask.

18. On or about May 13, 2020, following the complaint against Colston, Plaintiff was ordered by Sergeant McCord (hereinafter "McCord") (black male) to clock out and told that he could not return to work until a resolution about wearing a covid mask was reached. Plaintiff was then informed that the City of Birmingham's face covering ordinance was extended until May 22, 2020. Plaintiff was required to use his own paid vacation time for this absence.

19. On or about May 20, 2020, Plaintiff was informed by Human Resources that they were waiting on his ADA paperwork, however Human Resources had not mailed the ADA paperwork until May 20, 2020.

20. On or about May 22, 2020, Plaintiff received ADA paperwork from the City of Birmingham's Human Resources Department and visited his doctor for the third time for documentation relating to his disability. Plaintiff also observed three Birmingham Police Officers on duty without masks.

21. On or about May 22, 2020, Plaintiff returned the completed ADA paperwork to Human Resources.

22. On or about June 2, 2020, Captain Smith (hereinafter "Smith") informed the Plaintiff that he would be transferred from his patrol assignment to a city jail assignment beginning on June 3, 2020. Plaintiff was also informed that he would be allowed to return to work if he wore a face shield instead of a face mask.

23. On or about June 4, 2020, Plaintiff was instructed by Sergeant Blackwell (hereinafter "Blackwell") (black male) and Lieutenant Payne (hereinafter Payne") (black male) that he could not leave the jail to perform his normal duties because Plaintiff was seen wearing the face shield and someone complained, it is believed the person who complained was high ranking within the police department that the city provided for his accommodation.

24. Plaintiff's reassignment and change in responsibilities was so substantial and material that it altered the terms, conditions, and privileges of his employment. Plaintiff was reassigned from patrol, a position he held for 11 years, to work in the city jail, which is outside of his job description. Plaintiff lost the autonomy of his position as a patrol officer and was required to remain at the jail for the entirety of his shift. Plaintiff loss prestige in his role as a police officer and his reputation suffered because of this reassignment, as officers that have been disciplined are regularly reassigned to the jail. Throughout the Birmingham Police Department, a reassignment to the jail is generally regarded by officers as a demotion. Plaintiff was not allowed to leave the jail to perform duties only sworn police officers who are assigned to the jail are permitted to do, such as hospital visits, inmate transport, and "money runs." Plaintiff's off days were changed to Mondays and Tuesdays, while other sworn police officers assigned to the jail are given at least one weekend day as an off day. Plaintiff was assigned the essential duties of non-sworn civilian correctional officers at the jail, including feeding inmates and working an assigned post.

25. On or about June 11, 2020, Plaintiff received a letter from the Department of Human Resources saying that they were closing the inquiry into Colston.

26. On or about July 29, 2020, Plaintiff was diagnosed with PTSD.

27. On or about July 29, 2020 to August 3, 2020, Plaintiff filed Grievance forms one (1), two (2), and three (3) concerning the city's refusal to adequately and fairly enforce their own policies.

28. On or about August 5, 2020, Plaintiff was informed by McCord that Colston was "showing off" a copy of Plaintiff's grievance around the precinct.

29. On or about August 6, 2020, Plaintiff contacted Jennifer Samuelson (hereinafter "Samuelson") in the Human Resources department concerning his grievances. Plaintiff sent Samuelson a copy of the grievances he submitted.

30. On or about August 7, 2020, Plaintiff met with Samuelson concerning the ongoing issues regarding the wearing of masks and Plaintiff's PTSD.

31. On September 1, 2020, Human Resources returned to Plaintiff 50 hours of personal time.

32. On September 8, 2020, Plaintiff was informed by Samuelson that Human Resources would only be giving Plaintiff 70 hours back of the 120 hours Plaintiff was required to use. Plaintiff was not given an explanation as to why all of the hours were not returned.

33. On September 16, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission based on his disability, race, and retaliation. (See Exhibit A).

34. On or about February 4, 2021, Plaintiff was served with a notice of a disciplinary determination hearing alleging that Plaintiff "disobeyed a direct order from Sergeant Joshua Osborne when he (Plaintiff) refused to put on a protective mask." The determination hearing was originally set for February 10, 2021, but was rescheduled for reasons unknown to Plaintiff. Currently, the determination hearing is still pending as Plaintiff has been on leave.

35. On May 3, 2021, Plaintiff was issued a Notice of Right to Sue letter from the U.S. Equal Employment Opportunity Commission. (See Exhibit B).

36. Between June 3, 2020 to September 9, 2020, Plaintiff observed numerous other black officers performing duties at the city jail and around town without face masks. Plaintiff further avers that these officers did not receive any reprimand for their refusal to wear a mask.

37. This complaint has been filed within 90 days of Plaintiffs' receipt of the notification of Right to Sue letter from the U.S. Equal Employment Opportunity Commission.

### COUNT ONE
### DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12101 et. seq., AS AMENDED

38. Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-seven (37) as if fully set forth herein.

39. The Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq., prohibits discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

40. Plaintiff suffers from PTSD, a disability that is a physical and/or mental impairment that substantially limits one or more major life activities of Plaintiff, as defined in The Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq.

41. From on or about April 24, 2020 to present, Defendant subjected Plaintiff to continual harassment and hostile work environment by refusing to acknowledge Plaintiff's disability and treating others without disability with more leniency and understanding regarding the requirements to wear a mask.

42. After asserting his rights under the ADA, Defendant reassigned Plaintiff to the jail.

43. Defendant required Plaintiff to use personal time during the Defendant's investigation into Plaintiff's disability and did not return all of the hours Plaintiff used.

44. Defendant refused to make reasonable accommodations to the known physical and/or mental limitations of Plaintiff.

45. Defendant has subjected Plaintiff to a disciplinary determination hearing for his refusal to wear a mask due to his disability.

46. Defendant has discriminated against Plaintiff in the advancement, terms, conditions, and privileges of his employment on the basis of her disability in violation of The Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq.

### COUNT TWO
### RETALIATION IN VIOALTION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12203 et. seq., AS AMENDED

47. Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-seven (37) as if fully set forth herein.

48. The Americans with Disabilities Act, 42 U.S.C. § 12203 et. seq., prohibits discrimination against any individual because such individual has opposed any act or practice made unlawful by this chapter.

49. Plaintiff suffers from PTSD, a disability that is a physical and/or mental impairment that substantially limits one or more major life activities of Plaintiff, as defined in The Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq.

50. On or about April 24, 2020, Plaintiff informed Defendant of his disability and his inability to wear a mask. Defendant failed to adequately explain the measures taken against Plaintiff due to his inability to wear a mask, including, but not limited to, Plaintiff's reassignment to the city jail and the discrepancy between the treatment the Plaintiff and other officers in similarly situated positions. Additionally, Defendant refused to fully compensate Plaintiff for his missed work due to the Defendant's

investigation of Plaintiff's disability. Defendant has subjected Plaintiff to a disciplinary determination hearing for his refusal to wear a mask due to his disability and after Plaintiff filed his EEOC charge.

51. Defendant retaliated against Plaintiff because Plaintiff took steps to enforce his lawful rights under The Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq.

52. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages as a consequence of Defendant's unlawful conduct.

### COUNT THREE
### PLAINTIFF'S CLAIMS OF RACE DISCRIMINATION
### IN VIOLATION OF TITLE VII
### AGAINST DEFENDANT

53. Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-seven (37) as if fully set forth herein.

54. Plaintiff has been discriminated against by Defendant based on his race, white, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

55. On or about April 24, 2020, Plaintiff informed Defendant of his disability and his inability to wear a mask. Defendant failed to adequately explain the measures taken against Plaintiff due to his inability to wear a mask, including,

but not limited to, Plaintiff's reassignment to the city jail and the discrepancy between the treatment the Plaintiff and other officers in similarly situated positions. Additionally, Defendant refused to fully compensate Plaintiff for his missed work due to the Defendant's investigation of Plaintiff's disability. Defendant has subjected Plaintiff to a disciplinary determination hearing for his refusal to wear a mask due to his disability and after Plaintiff filed his EEOC charge.

56. Since the filing of his EEOC charge, Plaintiff has been subjected to discipline, reassignment, and a hostile work environment by his supervisors due to his refusal to wear a mask. No other similarly situated black officers have been disciplined or reassigned for failing to wear a mask.

57. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages as a consequence of Defendant's unlawful conduct.

### COUNT FOUR
### PLAINTIFF'S CLAIMS OF RETALIATION
### IN VIOLATION OF TITLE VII AGAINST DEFENDANT

58. Plaintiff hereby adopts and re-alleges paragraphs one (1) through thirty-seven (37) as if fully set forth herein.

59. On September 16, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission based on his disability, race, and retaliation. (See Exhibit A).

60. On or about February 4, 2021, Plaintiff was served with a notice of a disciplinary determination hearing alleging that Plaintiff "disobeyed a direct order from Sergeant Joshua Osborne when he (Plaintiff) refused to put on a protective mask." The dated of the alleged incident Plaintiff is being charged with was April 24, 2020. The determination hearing was originally set for February 10, 2021, but was rescheduled for reasons unknown to Plaintiff. Currently, the determination hearing is still pending as Plaintiff has been on leave.

61. No other similarly situated black officers have been disciplined or reassigned for failing to wear a mask.

62. This disciplinary action being taken against Plaintiff is unlawful retaliation and a violation of Plaintiff's rights under Title VII.

63. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages as a consequence of Defendant's unlawful conduct.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief after a trial by jury:

A. Grant Plaintiff a declaratory judgment that the practices complained of herein are violative of the provisions of The Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq. and the amendments thereto;

B. Grant Plaintiff an order enjoining Defendants and all persons acting in concert with Defendants from engaging in discriminatory and retaliatory employment practices;

C. Grant Plaintiff the appropriate amounts of back-pay, interest, benefits, damages, pay raises with back pay, and reinstatement to the job position from which he was discriminatorily denied and/or demoted, or in the alternative, front pay;

D. Grant Plaintiff an award of compensatory damages, including but not limited to an award for mental anguish and emotional distress;

E. Award Plaintiff his costs and expenses, including an award of reasonable attorney's fees; and,

F. Award such other relief as may be appropriate.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL CLAIMS TRIABLE.**

Respectfully Submitted,

/s/ Scott Morro
Scott Morro (ASB-4954-C30M)
/s/ Zachary Morro
Zachary Morro (ASB-0464-D37X)
Attorneys for Plaintiff
Morro Law Center, LLC
P.O. Box 1644
Gardendale, AL 35071
Telephone: (205)631-6301
Fax: (205) 631-6302

morrowlawcenter@bellsouth.net

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL**